FILED
CLERK, U.S. DISTRICT COURT

DEC - 4 2007
10:25
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HUMAN TOUCH, LLC (formerly INTERACTIVE HEALTH, LLC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> WFO IMPORTS LLC, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No. CV 06-1902 VBF (PLAx) <br><br> **EXPERT REPORT OF JACK ZABLE** <br><br><br><br> **Hon. Valeria Baker Fairbank** |

## *My Qualifications and Experience*

1.      I received a Bachelor of Science in Mechanical Engineering from the City College of New York in 1963 and a Masters and Ph.D. in Mechanical Engineering from Purdue University in 1965 and 1969 respectively.  I am currently employed in the Department of Mechanical Engineering at the University of Colorado, Boulder as an Endowed Chair Professor – Industry Professor of Mechanical Engineering Design.  I have been in my current position since 1997.  My Curriculum Vitae is attached as Ex. J.

2.      In my current position, I regularly teach courses in the field of mechanical engineering.  I am also an advisor on mechanical engineering projects.  In this capacity, I have reviewed numerous mechanical engineering designs.

3.      Prior to joining the University of Colorado as a professor, I worked as a mechanical engineer with IBM for over 30 years.  During my time at IBM, I was appointed to a Patent Review Committee that was responsible for reviewing invention disclosures and recommending a proper course of action with respect to patent filing given the goals of the company and the various divisions.  I was on the Patent Review Committee for six years from my appointment until I left IBM to join the academic staff at the University of Colorado.

4.      I am a named inventor/co-inventor on 26 issued U.S. patents.  In addition to the issued U.S. patents, I have 61 invention disclosure documents published in the IBM Technical Disclosure Bulletin.

5.      I have been jointly retained by WFO Imports LLC and King Kong USA, Inc. to provide testimony in this case.  I am being paid an hourly rate of $200/hr. for my time.  A list of my articles and publications are attached to my Curriculum Vitae.  I served as an expert for the defense in one matter in the last four years, a case styled *Telechem International, Inc. v. Point Technologies, Inc.,* Case No. 4:03cv1543 (N.D. Cal.).

*Materials Reviewed*

6.    I have reviewed the following items: U.S. Patent No. 6,629, 940 ("the '940 Patent" or "the Shimizu '940 Patent") and its file history; U.S. Patent No. 7,041,070 ("the '070 Patent" or "the Hsieh '070 Patent"); the Claims Construction Order; the Declaration of Hans Dehli in Support of Plaintiffs' Motion for Summary Adjudication of Literal Infringement and the accompanying Exhibits; the Supplemental Declaration of Hans Dehli in Support of Plaintiffs' Motion for Summary Adjudication of Literal Infringement and the accompanying Exhibits; the Court's October 18, 2007 Order Denying Plaintiff Human Touch's Motion for Summary Adjudication of Literal Infringement; and the Osim/Brookstone uHarmony Chair.

*Summary of My Opinions*

7.    I understand that Plaintiffs have moved for summary adjudication of the issue of literal infringement for claims 1, 8 and 9 of the '940 Patent. My further understanding is that when the issue on summary judgment is literal infringement the patentee is required to demonstrate that the accused device contains every limitation in the asserted claims and that if even one limitation is missing or not met as claimed, there is no literal infringement. Finally, I understand that each limitation of the claim must be met by the accused device exactly, and any deviation from the claim precludes a finding of infringement. In my opinion, because of the differences in operation and design, the WFO massage chairs do not contain each and every claim limitation of the asserted claims of the '940 patent as required for literal infringement. In particular and as explained in more detail below, I believe that: the PHP 2024 and 2026/2027 does not have a right and left massaging member as claimed in the '940 Patent; the PHP 2026/2027 does not have a guide member as claimed in the '940 Patent; the PHP 2026/2027 does not have a right and left cam member as claimed in the '940 Patent; Claim 1 of the '940 Patent

- 3 -    EXPERT REPORT OF JACK ZABLE

includes a right and left cam member and guide member since "driving device" is a means-plus-function claim element; and the Osim/Brookstone uHarmony massage recliner uses the same lower leg massaging assembly as the PHP 2026/2027 massage chair.

### Design and Operation of the PHP 2024, PHP 2026/2027 Massage Chairs

8.      I have examined and observed the design and operation of the lower leg massaging mechanism for the PHP 2026/2027 (Exs. A1-9) and the PHP 2024 (Exs. B1-3) massage chairs, both removed from the final product as well as mounted in the final product as sold. The following paragraphs summarize my observations regarding the design and operation of the lower leg massaging mechanism.

9.      It is my understanding that the PHP 2024 massage chair has been marketed and sold using both a foam cushion and an airbag in combination with a plastic disk member as a massage member. I observed the operation of the design of the PHP 2024 having an airbag system. I also observed the component parts of the PHP 2024 having a foam cushion member.

### Design of the Lower Leg Massaging Assembly and Its Components

10.      The lower leg massaging assembly of both the PHP 2024 and the PHP 2026/2027 has four massaging members coupled to the rotating shaft. (Exs. A4-6, B1). There are two massaging members making up a massaging member pair on each side of the motor. The motor is coupled to the shaft and is operational to impart rotation on the rotating shaft. (Exs. A7-9, B2). The two massaging members are sufficiently spaced apart to allow an individual to place his/her lower leg and/or foot between the massaging member pair. (Exs. A10-12).

11.      In the PHP 2026/2027 massage chairs and 2024 airbag chair, each massaging member is formed of a plastic disk member and an airbag system having an airbag, a fill tube, a mesh cover and a number of tie straps that secure the airbag

- 4 -      EXPERT REPORT OF JACK ZABLE

to the plastic disk member. (Exs. B3, D1 and D3). The airbag system is coupled to an inflation mechanism that inflates and deflates the airbag both before and during a massaging operation. (Exs. A3-4, B1, F3). Each individual element, i.e., the plastic disk member and the airbag system, together forms the massaging member of the PHP 2026/2027 and 2024.

12.    The massage chairs also include a compressor, air piping and a valve for inflating and deflating the airbags as well as control circuitry to direct both the timing and intensity of the inflation and deflation of the airbag system of the four massage members. (Exs. F1-4).

13.    In the PHP 2026/2027, each massaging member is fitted with a separate component:  a ball bearing assembly pressed into a recess that is molded into the lower portion of the plastic disk member. (Exs. D2-3, E3-4). The ball bearing assembly is comprised of an inner race assembly, an outer race assembly and ball bearings. (Ex. E7). The inner race is free to rotate with respect to the outer race. So, since the outer race assembly is sized to be pressed into the recess in the massaging member, the ball bearing assembly has a inner race assembly that rotates freely within the massaging member. The inner race bearing member is sized to receive one end of the cam member. (Exs. E2 and E5). The three-piece circular bearing assembly has a circular outer race member that is sized to fit within the recess of the massaging member, and a number of ball-bearings between the circular inner race member and the circular outer race member. (Exs. E3 and E7).

14.    The left and right cam members of the lower leg massaging assembly of the PHP 2026/2027 have a first end portion that is configured so that it may be fixed to the rotating shaft. (Exs. C1-3). The second end portion of the cam member is shaped to fit snuggly with the inside surface of the circular inner race member. (Exs. C1-2, C4 and E1). In this way, the cam member remains fixed with respect to the rotating shaft (Ex. E7), however, since the circular inner race member spins freely and rotates independently with respect to the circular outer race member that

is snap-fit into the massaging member, the circular outer race member is not fixed with respect to the rotating shaft. Therefore, the massaging member does not rotate along with the rotating shaft when the shaft is in operation. Stated another way, the design of the circular bearing assembly ensures that the rotation of the massaging member is independent from the rotation of the revolving shaft. (Ex. E7).

15.    The inclined surface of each of the left and right cam members of the PHP 2026/2027 are inclined with respect to the rotating shaft member, *i.e.*, it is not perpendicular to the rotating shaft. (Exs. C9-10). The second end of each of the cam members is a substantially round member having an end surface that is sized to fit within and contact the circular inner race member. (Exs. C4, C6, and E2). Significantly, the inclined surface of the left and right cam members does not contact or "abut" the massaging members. (Ex. I, video entitled "showing gap between cam and bearing assembly"); M1-2). There is a gap of about 1/100", the thickness of a piece of paper, between the inclined surface of the cam member and a surface of the circular bearing assembly that is maintained during operation. (Exs. C7-8). The circular inner race member is not part of the cam or the massaging member. This separate component contacts both the ball bearing assembly and the substantially round member of the second end of the cam member. (Exs. E2-3, E5-7). The left cam member coupled to the circular inner race member of the circular bearing assembly of the left massaging member has a significant inclined surface (Exs. C9-10), whereas the right cam member coupled to the circular inner race member of the circular bearing assembly of the right massaging member has a lesser degree of inclined surface (Exs. C9-10). In both cams, the outside surface of the second end of the cam member and the inside surface of the bearing, is eccentric to the center of the drive shaft. (Exs. C9-10). The eccentricity of the left cam is significantly greater than that of the right cam. (Exs. C9-10). This contributes to the different rates of motion of the left and right massaging members. (Ex. I, video entitled "eccentric cam imparting movement").

EXPERT REPORT OF JACK ZABLE

16.     Each massaging member is positioned by a massaging member support pin that is fixed to the base plate of the lower leg massaging assembly of the PHP 2026/2027. (Ex. D5). Each massaging member has a support pin groove or guide channel on the lower portion of the plastic disk member for receiving the support pin. (Exs. D5-6). The support pin groove is lubricated and allows the support pin to travel within the groove while the massaging member is moving through its respective massage movement during a 360° revolution of the rotating shaft. (Exs. D7-8).

17.     The massaging member support pin of the PHP 2026/2027 allows each of the massaging members to move laterally along the rotating shaft through their respective massaging movement for a 360° revolution of the rotating shaft while the shaft rotates but at the same time positions the massaging member relative to the base (e.g., upright with respect to the base). (Exs. A3, A6-7). The circular bearing assembly prevents the massaging member from rotating with respect to the rotating shaft. (Exs. E2-4). Stated differently, the combination massaging member support pin and support pin groove only places the massaging member in a specified position and does not restrict rotation of the massaging member with respect to the rotating shaft. (Exs. A3, A6-7).

### *Operation of the Lower Leg Massaging Assembly*

18.     In operation, a person places his/her lower legs in the space between the pairs of massaging members of the lower leg massaging assembly for both the PHP 2024 and the PHP 2026/2027. (Exs. A10-12). The device provides a control mechanism to inflate and deflate the airbag assembly, both before the lower leg massaging assembly is turned on and after the assembly has been activated. (Ex. F1).

19.     The PHP 2024 massage chair has two modes of operation. In the first mode of operation, the massaging members in a massaging member pair move

**EXPERT REPORT OF JACK ZABLE**

parallel to one another.  In the second mode of operation, the massaging members in a massaging member pair move in a synchronous massaging motion.

20.     In my observation of the movement of the massaging members of the lower leg massaging assembly of the PHP 2026/2027 massage chair, I have closely studied the movement of the massaging members in a massaging pair relative to one another through a 360° cycle of the revolving shaft.  It is my conclusion that the massaging members are always moving in the same direction.  This movement is not to be confused with a parallel movement, where the members are moving in a synchronous pattern.  Through the design of the cam members, the left massaging member has a significant movement through a distance of about 2-3/4 inches measured looking down from the top view (Exs. D9-10, not to scale), whereas the right massaging member has a lesser movement through a distance of about 5/8 inch (Exs. D9-10, not to scale) for a 360° rotation of the revolving shaft.  When the left massaging member is moving away from the right massaging member, the right massaging member is always moving toward the left massaging member for the first 180° of rotation and vice versa for the second 180° of rotation.  Thus, the movement of the massaging members is one where their rate of motion is quite different, even though they are in phase, and their overall movement though a 360° cycle of the revolving shaft is always going to be the same.

21.     The variable rate movement of the massaging members in the PHP 2026/2027 is created, at least in part, by the design of the cam members.  (Exs. C9-10).  Each massaging member has an associated cam member that, in combination with the free wheeling circular bearing member and the revolving shaft, operates to move each of the four massaging members through their respective massaging movement during a 360° rotation of the revolving shaft.  The variable rate movement of the massaging members is captured by the video recording labeled "PHP2027 with laser pointers" in Ex. L to Hans Delhi's Supplemental Declaration.

As shown in the Delhi video, the point of intersection of the lengthwise inclined angle is always off to the right of the centerline.

***Claims 1, 8 and 9 of the '940 Patent Describe a Right and Left Massaging Member Formed of an Elongated Board***

22. The language of claims 1, 8 and 9 of the '940 Patent require "a right and left massaging member each formed of an elongated board" as one of the claim elements. The claim language of claims 1, 8 and 9 further modifies the "elongated board" as "having a predetermined length and a predetermined width."

23. It is therefore my opinion, based upon my reading of the claim language of independent claims 1, 8 and 9 of the '940 Patent, that the '940 Patent requires right and left massaging members that are formed of an elongated board.

***Claims 1, 8 and 9 of the '940 Patent Describe Massaging Members Each Having an Inside Surface Bounded by the Lengths (Plural) and Width (Singular) "Thereof"***

24. It is unclear from reading claims 1, 8 and 9 whether the phrase "lengths and width thereof" is referring to the lengths and width of the left and right massaging members or the predetermined length and predetermined width of the elongated board. The uncertainty comes from the plural use of the term "lengths" and the singular use of the term "width" to define what the inside surface of the right and left massaging members is bounded by in the claim. I consulted the specification, and the massaging member is defined in terms of its length (L) in FIG. 1 and its height (H) in FIG. 2. It is therefore my understanding, based upon the claim language itself and the specification, that since width is written in the singular tense and length is written in the plural tense, the term "lengths" is referring to the length and height of the massaging member – since a surface may have multiple lengths – and the term "width" is specifically referring to the thickness of the massaging member. My analysis does not materially change even

if the lengths (plural) and width (singular) of the right and left massaging members are found to be measured across the surface of the left and right massaging members without taking into account the thickness. For example, if the claim term "width" is found to be measured across the surface of the right and left massaging member, the width of the massaging member of the 2026/2027 and 2024 with airbags still changes when the airbag inflates and deflates.

### *The PHP 2024 and 2026/2027 Do Not Have a Right and Left Massaging Member as Claimed in the '940 Patent*

25.    For both the PHP 2024 (with airbags) and the PHP 2026/2027, the inside surface of each massaging member is defined by the surface of the airbag system fixed to the plastic disk member. (Exs. A7-9, B1-2). The surface that contacts the lower leg of the individual is the surface of the airbag. The surface of the plastic circular disks never makes direct contact with any part of the lower leg of the individual receiving the massage. (Exs. A10-12). In operation, the width of the massaging member changes, as measured from the outside surface of the circular plastic disk to the surface of the airbag changes, both before operation and during operation respectively. (Exs. A7-9, B1-2). In addition, due to the movement of the airbag, it is possible for the surface of the airbag to extend beyond the lengths of the plastic disk member. Thus, the inside surface of a massage member of the lower leg massaging assembly is bounded by the surface and the width of the change in pressure of the airbag system by inflating and deflating, and not by the predetermined lengths and width of the plastic circular disk. (Exs. A7-9, B1-2). Both before and during operation of the PHP 2026/2027 and PHP 2024 (with airbags), the inside surface of the massage member changes due to change in pressure caused by the inflation and deflation of the airbags. Moreover, due to the massaging action of the airbag system on a lower leg, the width/surface of the airbags press outward and extend beyond the limits of the plastic disk members.

26.    A massaging member having a plastic disk member and an airbag system is a significantly different element than a massaging member "formed of an elongated board having a predetermined length and a predetermined width" and "having an inside surface bounded by the lengths and width thereof." I also note that the patentee fails to make any mention to the use of airbags within the figures, claims or specification from column 2, line 22 forward. The only mention of airbags is in the section entitled "Background Art" where the patentee repeatedly refers to airbag technology as a disadvantageous. I also note that the massaging member claim element is specifically recited as "formed of an elongated board having a predetermined length and a predetermined width." Significantly, the language used in the '940 Patent was not "massaging member" or even "massaging member formed of an elongated board;" the patentee specifically uses the language "elongated board having a predetermined length and a predetermined width" when describing what forms the massaging member. It is my opinion from reading the claim language in light of the specification that the patentee never intended the use of airbags with this invention.

27.    This conclusion is reinforced by the language of the '070 Patent. Mr. Delhi has concluded that the PHP 2026/27 massage chairs are made according to the '070 Patent. He specifically states that the '070 patent "accurately describes the configuration of the PHP 2027 Group mechanism, *including the individual components that make up the massage mechanism*." The '070 Patent specifically states, at column 1, lines 60-67 that the "left and right massaging members are *provided with* a massaging airbag which is inflated and deflated in a predetermined way, the present invention can produce wave-like massaging effect. Furthermore, the massaging airbags can be adjusted flexibly according to personal requirements, such as, on the massaging force and manner of massaging." The '070 Patent uses "provided" in several locations when stating that the massaging members are

provided with massaging air bags. I find this language "provided with" significant given the patentee's use of "formed of" within the claims to recite "a right and a left massaging member each formed of an elongated board having a predetermined length and a predetermined width." To me, "formed of" means that the massaging member is formed of the elongated board, and nothing more that materially affects the basic characteristic of the board. It is therefore my opinion that the language of the '070 Patent defining the airbags, as well as pointing out that the massaging effect is "like a real professional," is significantly different in both structure and function than a massaging member formed of an elongated board.

28.    The PHP 2024 was also marketed and sold with massaging members comprised of a plastic member and a thick rubber cushion. Again, the surface of the plastic member never makes direct contact with any part of the lower leg of individual receiving the massage. In operation, the width of the massaging member changes as measured from the outside surface of the plastic member to the surface of the thick rubber cushion, both before operation and during operation, respectively. Thus, the inside surface of a massage member of the lower leg massaging assembly of the 2024 without airbags is bounded by the surface and width of the deformable thick rubber cushion and not the predetermined length and width of the plastic member.

29.    The claim language of claims 1, 8 and 9 of the '940 Patent requires "a driving device for moving the right and left members toward and away from each other. . ." In my opinion, this language implies that the motion of the massaging members are out of phase with each other by 180°. My opinion is reinforced by the figures of the '940 Patent, where the angle of intersection drawn from the longitudinally extending edge of the massaging member pair is illustrated as intersecting at a point between the plane of the two massaging members. In the PHP 2026/2027, the massage members move in phase with each other, but at

different rates. This in phase movement is illustrated by the video entitled "PHP2027 with laser pointers" in Ex. L to Hans Delhi's Supplemental Declaration, particularly where the point of intersection occurs at a point outside the extended plane of the two massaging members.

30.    I performed an experiment, illustrated by the photos attached as Exs. O1-13. From measurements taken of the PHP 2026/2027 massaging members, a significant portion of the deformation is due to the presence of the air bags. In fact, the air bags are six-times more deformable than the paddles. Thus, the function of "resiliently deformable" as recited in claim 1 is to a primarily handled by the air bags in the PHP2026/2027 massage chair. In the PHP 2026/2027, the role of the massaging members to provide resilient deformation is insignificant.

### Claims 8 and 9 of the '940 Patent Describe a Driving Device Having a Guide Member

31.    The language of claims 8 and 9 of the '940 Patent requires a driving device comprising "a guide member for allowing the right and left massaging members to move longitudinally with respect to the revolving shaft but restricting a rotation with respect to the revolving shaft" as one of the claim elements. From my reading of the claim language, the guide member is defined by two functions. The first function of the guide member in claims 8 and 9 is allowing the right and left massaging members to move longitudinally with respect to the revolving shaft. The second function of the guide member in claims 8 and 9 is restricting rotation of the right and left massaging members with respect to the revolving shaft.

32.    It is therefore my opinion, based upon my reading of the claim language of independent claims 8 and 9 of the '940 Patent, that the '940 Patent requires that (i) the guide member is defined in terms of two functions; (ii) the guide member allows the right and left massaging members to move longitudinally

with respect to the revolving shaft; and (iii) the guide member restricts rotation of the right and left massaging members with respect to the revolving shaft.

33.    My opinion regarding the structural definition of the term "guide member" in claims 8 and 9 of the '940 Patent is further reinforced by the use of the term "guide member" or "guiding member" within the specification of the '940 Patent.  I have attached as Exhibits G1-16 a copy of the '940 Patent highlighting each instance of the use of "guide pin," "guide rail," "guide member," or "guiding member" except in the claims.  The guide member is described in the specification of the '940 Patent as having two pieces, a guide pin projecting from the center of the lower edge of a massaging member downwardly and a guide rail with which the guide pin engages.

34.    My opinion of the term "guide member" is further confirmed by Figure 3 of the '940 Patent.  The guide member referenced in the patent as "guide member 16" is illustrated in Figures 2 and 3 of the '940 Patent, but is specifically blown-up and shown in detail in Figure 3.  As shown, the guide member 16 is comprised of a guide pin 23 projecting from the massaging member downwardly and a guide rail 24 with which the guide pin engages.  I have attached as Exhibits K1-2 a copy of the '940 Patent highlighting the two piece guide member 16 in Figure 3.

35.    From my reading of (i) claims 8 and 9 of the '940 Patent, (ii) the written description using the term "guide member" or "guiding member" in the specification of the '940 Patent, (iii) the illustration of the guide member in Figure 3, it is my opinion as a person having ordinary skill in the art, after reading the text of the '940 Patent that as taught by the '940 Patent the term "guide member" means a structure for allowing the right and left massaging members to move longitudinally with respect to the revolving shaft and restricting a rotation of the right and left massaging members with respect to the revolving shaft, where the

structure includes a guide pin projecting from the massaging member downwardly and a guide rail with which the guide pin engages.

### The PHP 2026/2027 Does Not Have a Guide Member as Claimed in the '940 Patent

36.    It is my opinion that the PHP 2026/2027 does not have a guide member as claimed since it lacks (i) a guide pin extending from the massaging member; (ii) a guide rail in the base plate that engages the guide pin; and (iii) a guide member that restricts a rotation of a massaging member with respect to the revolving shaft.

37.    I disassembled the leg massaging mechanism of a PHP 2026/2027 to inspect the various parts of the massaging member and the associated components that position the massaging member in a desired position.  In accordance with the definition of guide member, as that term is used in the '940 Patent, it is my opinion that the PHP 2026/2027 has a two-piece construction of a pin/guide channel assembly that locates the massaging member in its massaging position while allowing the massaging members to travel through a massaging operation during a 360° rotation of the revolving shaft.  It is also my opinion that, unlike the description and figures in the '940 Patent, the pin is located in the base member and the guide channel member is located on the massage member.  The pin/guide channel assembly of the PHP 2026/2027 is shown in the photos attached as Exhibits D4-8 .  I directed the taking of each of the photographs used in the Exhibits.

38.    I performed an experiment that is captured by the four video recordings performed at my direction generally labeled "guide pin removed" in Exhibit I.  As shown, I removed each pin from each guide channel for four massaging members on a PHP 2026/2027.  I then operated the chair in its intended manner with the massaging members moving from side to side as they ordinarily

- 15 -    EXPERT REPORT OF JACK ZABLE

would as driven by the rotating shaft. At my direction, the experiment was allowed to continue for two hours. The four massaging members did not rotate with the shaft, despite lacking the pins that I had removed. If the pin's role is to restrict rotation of the massaging member with respect to the revolving shaft, I would have expected to see the massaging member move/rotate with the shaft. In my opinion, this experiment proves that the pin does not restrict rotation of the massage member with respect to the rotating shaft.

39.    I refer to a videos labeled "three-piece bearing assembly" and "rotation of cam and circular bearing assembly" attached as Exhibit I. The videos show the operation of the combination of a cam member and a bearing assembly. It is my opinion that the construction of the three-piece ball bearing assembly – and not the pin/guide channel assembly – allows the massaging member to move through a massaging operation during a 360° rotation of the revolving shaft while at the same time restricting the rotation of the massaging member relative to the rotating shaft.

40.    The ball bearing assembly is a three-piece construction having an inner race member, an outer race member and a number of ball bearings located between the inner race and the outer race. The construction of the bearing assembly allows the inner race to rotate relative to the outer race. In this way, the outer race may be fixed to a first component and the inner race may be fixed to a second component and the second component will rotate with the inner race and freely rotate with respect to the first component that remains in a fixed position.

41.    The PHP 2026/2027 utilizes the three-piece construction of the bearing assembly to allow the massaging member to move through its massaging motion for a 360° rotation of the revolving shaft while preventing the massaging member from rotating with the shaft. The outer race of the bearing member is sized to press-fit within a recess in the massaging member. The inner race has a circular inner race surface that is sized to receive a circular end surface of the cam member.

The inner race surface and circular end surface of the cam member are press-fit together so that when the cam member rotates, the inner race rotates. The inner race and cam member rotate independently of the fixed outer race and massaging member due to the action of the ball bearings located between the two race members.

42. The three-piece bearing assembly construction allows the cam member to rotate 360° on the revolving shaft independently of the movement of the massaging member. The massaging member will remain in a fixed position, without the need to hold it in place, due to the action of the ball bearings. So, the inner race/cam member rotates independently of the outer race/massage member, such that the cam member performs its function of imparting linear movement to the massaging member while it rotates through a 360° rotation by being fixed to the rotating shaft. To be clear, in my opinion, the three-piece bearing assembly restricts the rotation of the massaging member relative to the shaft, not the pin/guide member assembly as specified in the '940 Patent.

43. I examined the videos submitted with the Supplemental Declaration of Hans Delhi. The video labeled "PHP2027 front view without guide pin" of Ex. L to his Supplemental Declaration confirms my opinion. In the video, a hand is shown rotating the massaging members through about a 130° rotation around the shaft. During this operation, the massaging members are clearly shown as being easily rotated with respect to the revolving shaft. I performed a second experiment that is captured by the video recording performed at my direction labeled "Dehli's experiment, machine on" in Exhibit I in which I have recreated Mr. Delhi's experiment, while taking it one step further. I removed the pin from the guide channel assembly in the same manner shown in the video labeled "PHP2027 front view without guide pin" of Ex. L to Mr. Delhi's Supplemental Declaration. I then recreated the approximate 130° movement of the massage member relative to the

shaft, as shown in the video. I then took the experiment further and operated the lower leg massaging mechanism of the PHP 2026/2027. I moved each of the four massaging members through the same approximate 130° rotation, only, unlike the Delhi experiment, the shaft was revolving through a 360° rotation at approximately 28.5 rotations/minute. Even as the shaft rotated, the massaging members moved through the approximate 130° rotation without effort, thus confirming my position that the three-piece bearing assembly restricts the rotation of the massaging member relative to the rotating shaft, not the pin/guide channel assembly.

44.    I performed a third experiment that is captured by the video recording performed at my direction labeled "inner race locked to other race" in Exhibit I. In the third experiment, I fixed the cam member to the massage member with a circular cover from the end of the cam, which simulated fixing the inner race relative to the outer race so that the ball bearings were essentially inoperable and would not allow the inner race to freely and independently rotate relative to the outer race. (Exs. E8-9). So as not to burn the motor in the actual PHP 2026/2027, I simulated the attempted rotation of the revolving shaft of the massaging mechanism of the PHP 2026/2027 on an assembly without a motor, with the pin/guide channel assembly in place. The rotating shaft would not move. So, in this case, the pin/guide channel assembly restricts rotation of the shaft altogether. Then I removed the pin from the guide channel and rotated the shaft again. The massage member rotated with the revolving shaft. The third experiment helps confirm my opinion that the construction of the three-piece ball bearing assembly – and not the pin/guide channel assembly – allows the massaging member to move linearly through a massaging operation during a 360° rotation of the revolving shaft while at the same time restricting the rotation of the massaging member relative to the rotating shaft.

45.    Since it is the ball bearings that allow the inner race member to rotate relative to the outer race member, the three-piece bearing assembly allows the inner race member to rotate freely within the cam while the outer race remains seated in the massaging member.  It is my opinion that the massaging member does not rotate with, around, relative to, or with respect to the revolving shaft when the shaft is rotated and the massage member is either allowed to rest on a surface without obstruction in the linear direction, held by the air hose assembly or allowed to hang freely by gravity.  This is shown at the beginning and end of the video entitled "PHP2027 front view without guide pin" of Ex. L to the Supplemental Declaration of Hans Delhi.  In another video entitled "rear perspective view without guide pin" in Ex L to the Supplemental Declaration of Hans Delhi, due to the linear movement of the plastic disk member, the member travels up the motor housing but then immediately falls down, in a direction opposite to the direction of the rotating shaft, due to gravity.  This movement is also due to the free-wheeling construction of the three-piece ball bearing assembly.

46.    Because of the bearing member, the movement of the massage member is independent from and without regards to the rotation of the rotating shaft.  So, a pin/guide member assembly does not restrict rotation, since that function is accomplished by the bearing assembly.  It is therefore my opinion that the pin/guide channel assembly in the PHP 2026/2027 massaging device does not restrict a rotation of the massaging member with respect to the revolving shaft since that function is performed by the bearing assembly.

### Claims 8 and 9 of the '940 Patent Describe a Driving Device Having a Right and Left Cam Member

47.    The language of claims 8 and 9 of the '940 Patent requires a driving device comprising "a right and a left cam member fixed at axially intermediate positions of the revolving shaft" as one of the claim elements.  The right cam

member is then further defined in claims 8 and 9 as "having a cam surface inclined with respect to the revolving shaft and abutted against the right massaging member." The left cam member is also further defined in claims 8 and 9 as "having a cam surface inclined with respect to the revolving shaft and abutted against the left massaging member."

48. It is therefore my opinion, based upon my reading of the claim language of independent claims 8 and 9 of the '940 Patent, that the '940 Patent requires that (i) the driving device has a left cam member and a right cam member; (ii) the left and right cam members are fixed to the revolving shaft; (iii) the left and right cam members each have a cam surface that is inclined relative to the revolving shaft; (iv) the inclined surface of the left cam member is abutted against the left massaging member; and (v) the inclined surface of the right cam member is abutted against the right massaging member.

49. My opinion regarding the structural definition of the term "cam member" in claims 8 and 9 of the '940 Patent is further reinforced by the use of the term "cam" and "cam member" within the specification of the '940 Patent. The term "cam member", and in particular the terms "left cam member" and "right cam member," are used extensively in the '940 Patent in multiple places. I have attached as Exhibits G1-16 a copy of the '940 Patent highlighting each instance of the use of "cam," "cam member," "cam surface," "left cam member" or "right cam member" except in the claims. The cam member is described as having three pieces, a front sandwiching plate 17, a back sandwiching plate 18 and a center plate 19, integrated into a single piece by fixing screws 20.

50. My opinion of the term "cam member" is further confirmed by Figure 3 of the '940 Patent. The cam member referenced in the patent as "cam member 15" is illustrated in several figures of the '940 Patent, but is specifically blown-up and in Figure 3. As shown, the cam member 15 is comprised of front sandwiching

plate 17, back sandwiching plate 18 and center plate 19 integrated into a single piece by fixing screw 20. I have attached as Exhibit L1 a copy of the '940 Patent highlighting the three piece cam member 15 in Figure 3.

51.    I have studied numerous dictionary definitions from various sources that define the term "cam" or "cam wheel." The definitions are attached as Exs. H1-17. It is my opinion that the definitions of cam or cam wheel to a person of ordinary skill in the art vary slightly but do have many aspects in common, and may be summarized as "a moving piece mounted on a rotating shaft so shaped to produce variable or reciprocating motion in another engaged or contacted part."

52.    The specification of the '940 Patent describes the cam member as being fixed to the revolving shaft 4. More specifically, the front sandwiching plate 17 and the back sandwiching plate 18 are described as fixed to the revolving shaft by a locking pin so as to move neither in the axial direction nor the rotating direction of the revolving shaft. Also illustrated and described in the '940 Patent, the center plate 19 is fixed to both the front and back sandwiching plates 17, 18 such that the inclined surfaces of the sandwich plates are abutted against the front and back surfaces of the center plate. So, since the center plate is fixed to the sandwiching plates that are fixed to the revolving shaft, the center plate 19 is also necessarily fixed to the revolving shaft. Therefore, the cam member is fixed to the revolving shaft.

53.    It is therefore my opinion that the '940 Patent requires that the left cam member and right cam member are fixed at axially intermediate positions of the revolving shaft. The cam member illustrated in Figure 3 and described in the text of the '940 Patent is fixed to the revolving shaft so that it does not move from side to side along the shaft or rotate with the shaft.

54.    The term "cam surface" is also defined within the written description of the '940 Patent and illustrated in Figure 3 as cam surface 21, which is shown as

part of the center plate 19. The inclined surface of the cam member 15 – more particularly the inclined surface of the center plate 19 – fits within a boss portion 22 of the massaging member 7. This configuration allows for sliding movement of the massaging member with respect to the cam member. The patent also states that the pair of left and right massaging members are driven by the inclined surface of the cam member. So, the inclined surface of the cam member is what creates the toward and away movement of the massaging members in the '940 Patent.

55. Since the cam member is fixed to the rotating shaft, the cam member rotates with the revolving shaft. In the '940 Patent, as the cam member rotates with the revolving shaft, the massaging member does not rotate but will instead follow the dimensions of the inclined surface that it is abutted against. The inclined surface of the cam member – in particular the inclined surface of the center plate sandwiched between the front and back sandwiching plate – slides along the end surface of the boss portion of the massaging member as the cam member rotates with the revolving shaft. This sliding movement, coupled with the fact that the cam member has an inclined surface, causes the massaging member to move toward and away from a vertical position. The term in the mechanical arts for this particular kind of construction, as I understand it, is referred to as a "wobble plate," and describes the movement that is imparted by a cam member on the massaging member that is accomplished by one sliding with respect to the other.

56. I have also consulted Webster for the dictionary definition of the terms "abut" and "against" to confirm my understanding of the inclined cam surface being "abutted against" the left and right massaging member. According to Webster, the term "abut" means to touch along a border or with a projecting part. I have attached a printout of the definition of abut from Webster online as Exhibit H18. Webster defines the term "against" as in contact with. I have attached a printout of the definition of against from Webster online as Exhibit H19.

57.    It is therefore my opinion that the '940 Patent requires that the inclined surface of the center plate of the cam member abuts against the end surface of the boss portion of the massaging member so as to allow sliding movement between the cam member and the massaging member so that the massaging member is rotatably connected to the revolving shaft in an inclined position with respect to the axis of the revolving shaft.

58.    From my reading of (i) claims 8 and 9 of the '940 Patent, (ii) the written description using the term "cam," "cam member," "left cam member" or "right cam member" in the specification of the '940 Patent, (iii) the illustration of the cam member in Figure 3, and (iv) the dictionary definitions of "cam" or "cam wheel," it is my opinion, as a person having ordinary skill in the art, that a "cam member" means a three piece cam design having an inclined surface that slidably contacts a massaging member so as to move the massaging member toward and away when the revolving shaft is rotated.

### The PHP 2026/2027 Does Not Have a Right and Left Cam Member as Claimed in the '940 Patent

59.    It is my opinion that the PHP 2026/2027 does not have a right and left cam member as claimed in the '940 Patent since it fails to provide (i) an inclined cam surface that abuts against a massaging member; and (ii) a three piece cam design having an inclined surface that slidably contacts a massaging member so as to move the massaging member toward and away when the revolving shaft is rotated.

60.    I have disassembled the leg massaging mechanism of a PHP 2026/2027 to inspect the various parts of the massaging member.  In accordance with the definition of cam member, as that term is used in the '940 Patent and in the various dictionaries that I consulted, it is my opinion that the cam member in the PHP 2026/2027 is a single plastic piece with an eccentric orientation relative to the

revolving shaft that is fixed to the rotating shaft and press-fit into a circular bearing assembly found within a recess in the massage member. It is also my opinion that the circular ball bearing assembly that is sized to press-fit into a recess molded into the massage member is a separate piece and is not part of either the cam member or the massage member. The PHP 2026/2027 does not use or include sandwich plates and or a fixing screw as taught by the '940 Patent. The cam member of the PHP 2026/2027 is shown in the photo attached as Exhibits E1-2. The bearing assembly of the PHP 2026/2027 is shown in the photo attached as Exhibits E2-3. The massaging member with the bearing assembly removed from the recess is shown in the photograph attached as Exhibit E3-4.

61.    Since the combination of the cam member, massage member and bearing assembly is difficult to illustrate in a photograph, I directed a draftsperson to create the drawings attached as Exhibits M1-2. The drawings illustrate the various features of the cam member, massage member and bearing member that are not easily seen. I have also directed the taking of a number of photographs attached as Exhibits C-E after deconstructing various components of the lower leg massaging mechanism of the PHP 2026/2027. For example, the photograph in Exhibit E5 shows the cam member press fit into the bearing member.

62.    I removed the circular bearing assembly from the recess molded into the massaging member to create a video labeled "showing gap between cam and bearing assembly" attached as Exhibit I. As shown, I have inserted a piece of computer paper in between an inclined surface of the cam member – as that term is used in claims, specification and Figure 3 of the '940 Patent – and the circular bearing member. The inclined surface of the cam member does not abut the side surface of the bearing member or any part of the massaging member. (Exs. C7-8).

63.    Neither the cam member nor the massaging member include the circular bearing assembly having an inner race, an outer race and a number of ball

bearings in between. Each of the three components has its own structure with its own function for a massaging action. In the Supplemental Declaration of Hans Delhi in support of the Plaintiff's Motion for Partial Summary Judgment of Literal Infringement, Mr. Delhi states that there is "a disagreement as to whether the bearing is part of the cam or part of the massaging member." I disagree with his supposition because, in my opinion, the circular bearing assembly is not part of either the cam or the massaging member – it is its own three-piece structure that prevents the rotation of the massaging member relative to the rotating shaft.

64.    The ball bearings of the circular bearing assembly permit the inner race to move independently of the outer race, as illustrated by the videos labeled "bearing assembly on revolving shaft" and "three-piece bearing assembly" in Exhibit I. I directed the taking of this video illustrating the operation of the massaging device by removing the end cap so as to show the movement of the inner race and the ball bearings with respect to the outer race. As shown, the inner race rotates independently of the outer race.

65.    As shown in the video labeled "three-piece bearing assembly" in Exhibit I, the outer race portion of the bearing member does not rotate with the revolving shaft when the inner race portion rotates. The circular inner race portion of the bearing assembly rotates at the same rate as the cam member since the cam member is sized to tightly press fit into the circular inner race portion. However, there are ball bearings between the circular inner race and the circular outer race which prevents the entire bearing member from rotating within its seat in the molded recess of the massaging member. This difference in rotation between the circular inner race and the circular outer race of the bearing member is significant. The cam member rotates on the revolving shaft and imparts the linear movement of the massage member relative to the shaft due to the eccentric nature of the cam relative to the rotating shaft and the cam's contact with the circular inner race. (Ex.

I, video entitled "eccentric cam imparting movement"). The massage member remains stationary due to the action of the ball bearings rolling between the circular outer race.

66.    I performed an experiment to confirm my understanding that the fact that the inclined surface of cam of the PHP 2026/2027 does not abut the massaging member has no effect on the massaging action of the massaging member. In the videos made at my direction entitled "eccentric cam imparting movement," "cam pushed partially out of inner race," and "movement comparison – cam in and out" attached as Ex. I, the movement of the cam member is shown with the cam seated within the inner race of the bearing assembly as manufactured and then with the cam a little more than half of the way out of the inner race, so that the gap between the inclined surface of the cam member and the surface of the bearing member is over exaggerated. As the video shows, the eccentric movement of the cam member is the same for each. The hole in the cam for receiving the rotating shaft is eccentric to the bearing and the bearing surface, and the extent of the eccentricity provides the movement of the massaging member.

67.    So, as shown in the video entitled "pushed out cam on rotating shaft" attached as Ex. I, when the pushed-out cam is fixed to the rotating shaft and the shaft is rotated as in a massaging action, the massaging member cycles through its massaging action just as it would if the cam was seated completely into the inner race of the bearing assembly. Again, as shown, the gap between the inclined surface of the cam member and the surface of the bearing member seated within the recess in the massaging member is over exaggerated. The operation of the cam member confirms my understanding that that the inclined surface neither abuts the massaging member in the design of the PHP2026/2027 nor provides the movement of the massaging members.

68.     In paragraph 30 of the Declaration of Hans Delhi in Support of Plaintiff's Motion for Summary Adjudication of Literal Infringement, Mr. Delhi states that the "massaging members of the PHP 2027 Group are mounted on a revolving shaft by means of cams." He then goes on to state that the cams are "fixed on the shaft" at locations along the length of the shaft and "rotate with the shaft." In light of this statement and his opinion that the bearing assembly is part of the cam, the outer race portion would have to be fixed to the rotating shaft as well. But the circular outer race portion of the bearing assembly is not fixed with respect to the rotating shaft. In my opinion, Mr. Delhi's assertions are incorrect because the circular bearing member is not "fixed on the shaft" and does not "rotate with the shaft," and therefore cannot be part of the cam member.

69.     Mr. Delhi has concluded that the PHP 2026/27 massage chairs are made according to the '070 Patent. In his Supplemental Declaration, Mr. Delhi states that the "cam component" includes a "cam guide wheel portion" and a "cam bearing portion." Nowhere in the '070 Patent is any of the three terms used, including the terms "cam" or "cam component." He specifically states that the '070 patent "accurately describes the configuration of the PHP 2027 Group mechanism, *including the individual components that make up the massage mechanism*."

70.     In the PHP 2026/2027 massage chairs, part of the cam member is in contact with a part of the circular bearing member such that the cam member rotates relative to the plastic disk member of the massaging member. (Exs. E5-7). To achieve this contact, the cam member of the PHP 2026/2027 is formed of a substantially circular shaped end portion on one end that is sized to fit snuggly within the inner race member of the circular bearing assembly. (Exs. E2, E5-6). It is the substantially circular shaped end portion that contacts an exposed surface of a circular inner race member that rotates within the plastic disk member. The inclined surface of the cam member of the PHP 2026/2027 never touches the

massaging member or the circular bearing assembly. So, the inclined surface of the cam member fails to abut against either the massaging member or the circular bearing member that rotates within the recess of the plastic disk member. (Ex. I, "showing gap between cam and bearing assembly").

71.    It is my opinion that the cam member of the PHP 2026/2027 is fixed to rotating shaft, but the massaging member will not rotate with respect to the shaft when the shaft is cycled through a 360° operation due to the design of the three-piece bearing member assembly that is not part of the cam member.

### *The Three-Piece Cam Member of the '940 Patent Creates a High-Friction Contact Point Between the Cam Member and the Massaging Member Necessitating the Need for a Guide Member*

72.    Figure 3 of the '940 Patent depicts the boss 22 on massage member 7 abutting against the incline surface 21 of cam 15. As the cam rotates, it imparts a left-right motion to the massage member via the boss 22. Since there is sliding contact between the boss 22 and incline surface 21, there is a fair amount of friction between the members. In fact, the friction is so significant, that it would cause the massage member 7 to rotate with the cam member 15 and revolving shaft 4. Thus, the guide member 16 comprising a guide pin 23 on massaging member 7 and a guide rail 24 that engages the guide pin is required to prevent the massage member from rotating with the shaft 4. Relatively speaking, the contact between the inclined surface 21 and the boss 22 is a high friction connection between the contact surfaces.

73.    In contrast, the massage member in the PHP 2026/2027 massage chair is in contact with a ball bearing assembly via a press fit. More particularly, the inner race of this bearing is press fit on to the circular end surface of the cam. Thus, the connection between the massage member and the cam is via a ball bearing assembly. The cam is then directly coupled to the rotating shaft. This

configuration is a low friction connection between the contact surfaces. In fact, this construction produces an order of magnitude lower friction force than that produced between the boss 22 and the inclined surface 21 of the three-piece cam member in the '940 Patent.

74.    It is my opinion that it is this low friction arrangement in the PHP 2026/2027 that eliminates the need for the massage member guide channel and machine frame pin to prevent rotation of the massage member with respect to the rotating shaft. It is also my opinion that the low friction arrangement in the PHP 2026/2027 accounts for the differences between the WFO chairs' use of a cam and the three-piece ball bearing assembly and the '940 Patents' use of a cam member that utilizes sandwiching plates and a fixing screw.

***Claim 1 of the '940 Patent Includes a Right and Left Cam Member and Guide Member Since "Driving Device" is a Means-Plus-Function Claim Element***

75.    I have read a copy of the October 18, 2007 Order Denying the Plaintiff's Motion for Summary Judgment. In particular, the Court has tentatively construed the term "driving device" as a means-plus-function claim element. I have been asked to examine the '940 Patent and offer my analysis as to the structure that performs the function of "moving the right and left massaging members toward and away from each other so that the lengthwise inclined angle changes to an opposite lengthwise inclined angle" as recited in claim 1. I agree with the Court's conclusion that the term "driving device" is a means-plus-function claim element.

76.    I have read the text of the '940 Patent and the term "driving device" is only used in the claims. However, the term "driving means" is used in several places within the specification. I also not that the terms "driving motor," "driving shaft," and "driving mechanism" are also used in several places within the specification, and each function differently. For example, the specification states

- 29 -    EXPERT REPORT OF JACK ZABLE

that "the revolving shaft 4 can be rotated in the forward and reverse directions via the *driving mechanism* comprising the gear 9 and the wheel 10." The specification also recites that a "*driving shaft* of the driving motor 5 is fitted with a worm gear 9, which in turn engages the worm wheel 10 fixed at the lengthwise center of the revolving shaft 4." And, the specification states that "the *driving motor* 5 comprises an electric motor being capable of rotating in the forward and reverse directions." Each of the recited driving elements in the specification of the '940 Patent would infringe a claim directed to a generic term "driving device," yet each of the elements does not perform the function provided in claim 1, namely, moving the right and left massaging members toward and away from each other so that the lengthwise inclined angle changes to an opposite lengthwise inclined angle.

77.     Driving device is a generic term that is not used in any particular manner and is not a structural term within the mechanical arts. Driving device and driving means represent the same component to me as a mechanical engineer and a person having ordinary skill in the art.

78.     The patent defines a driving means 14 as a revolving shaft 4, a pair of right and left cam members 15, 15 fixed at axially intermediate positions of the revolving shaft 4, and guide members 16, 16 for allowing the massaging members 7, 7 to move along the revolving shaft 4 but restricting them from rotating with the shaft. The language of the '940 Patent is clear that the driving means functions to move each massaging member toward and away from each other so that the angle of the massaging member changes with respect to the direction longitudinally along a leg changes.

79.     As stated above, the cam members in the '940 Patent each have a center plate 19 with a cam surface 21 that is inclined with respect to the revolving shaft. The inclined surface moves adjacent massaging members of a massaging member pair toward and away from each other. The inclined surface is also abutted

- 30 -     EXPERT REPORT OF JACK ZABLE

against the massaging members. So, the inclined surface on the cam member that abuts the massaging member drives the pair of left and right massaging members toward and away from one another.

80.    According to the specification of the '940 Patent, the guiding member 16 has a guide pin projecting from the center of the lower edge of the massaging member downwardly, and a guide rail 24 with which the guide pin engages. The specification goes on to state that guide rail 24 extends in the same direction as the revolving shaft 4. So, the combination guide pin/guide rail described in the specification of the '940 Patent allows each massaging member to move along the rotating shaft but restricts each massaging member from being rotated with the rotating shaft.

81.    The second function of restricting rotation by the guide member is significant due to the design of the three piece cam member. The inclined cam surface 21 of the center plate 19 is abutted with the end surface of the boss portion 22 of the massaging member 7 when the center plate 19 is fitted within the boss portion 22 of the massaging member 7. As shown in the Figures, the sandwiching plates 17, 18 are fitted on either side of the massaging member 7, and the three plates of the cam member 15 are integrated into one piece by fixing screws 20. For such a cam member/massaging member design, since the plates 17, 18 are fixed to the revolving shaft 4, and the inclined surface is abutted with the massaging member, the massage member would rotate with the revolving shaft without a component to restrict the rotation of the massaging member. So, as described in the '940 Patent, the massage member must include a guide member that engages a guide rail in the base for restricting the rotation of the massage member with respect to the rotating shaft.

82.    I also note that the language of claims 8 and 9 recites a driving device, and states that the "driving device comprises . . . a right and left cam member fixed

at axially intermediate positions of the revolving shaft . . . and a guide member for allowing the right and left massaging members to move longitudinally with respect to the revolving shaft but restricting a rotation with respect to the revolving shaft." It is my opinion that the driving device of claims 1, 8 and 9 are similar in scope, however, the structure identified in the specification for performing the function of "moving the right and left massaging members toward and away from each other so that the lengthwise inclined angle changes to an opposite lengthwise inclined angle" is a more expansive than claims 8 and 9.

83.    It is therefore my opinion that the "driving device" of claim 1 is similar in many respects to the driving device in claims 8 and 9, and must have (i) a revolving shaft, (ii) a left and right cam member having a three piece cam design, each having an inclined surface that abuts and slidably contacts the massaging member and imparts the motion of moving the right and left massaging members toward and away from each other when the revolving shaft is rotated, thus changing the lengthwise inclined angle and the widthwise inclined angle, and (iii) a guide member having a guide rail on the base plate that engages a guide pin extending from the massaging member so as to allow the massaging member to move along the revolving shaft but restrict rotation of the massaging member with respect to the revolving shaft.

### The Osim/Brookstone uHarmony Massage Recliner Uses the Same Lower Leg Massaging Assembly as the PHP 2026/2027 Massage Chair

84.    I have examined the design and operation of the OSIM uHarmony Massage Chair so as to compare it to the PHP 2026/2027 Massage Chair. It is my opinion that the lower leg massaging assemblies are the same in both chairs. (Exs. N1-5). The uHarmony Recliner uses the same airbag technology. (Exs. N2-5). The uHarmony Recliner also uses the same cam member and three-piece ball bearing assembly. It is my conclusion that my analysis and opinions regarding the

design and operation of the lower leg massaging assembly of the PHP 2026/2027 as it relates to the '940 Patent is equally applicable to the lower leg massaging assembly of the Osim/Brookstone uHarmony Massage Recliner. This is not surprising, as I understand both chairs are manufactured by the same company.


**[remainder of page intentionally left blank]**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23rd day of November, 2007.

_____
Jack L. Zable

EXPERT REPORT OF JACK ZABLE

## PROOF OF SERVICE

STATE OF COLORADO, COUNTY DENVER

I am employed in the county of Denver, State of Colorado. I am over the age of 18 and am not a party to the within action: my business address is 410 17th Street, Suite 2200, Denver, CO 80202

On November 23, 2007, I served the document described as **THE EXPERT REPORT OF JACK ZABLE** in this action by placing the true copies thereof enclosed in sealed envelopes addressed as follows:

Syed Hasan
Gary Dukarich
Christie, Parker & Hale, LLP
3501 Jamboree Road North Tower, Suite 6000
Newport Beach, CA 92660-2960
Facsimile: (949) 476-8640
*Attorneys for Interactive Health, LLC*

[X]    (BY FEDERAL EXPRESS) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with Federal Express on that same day at Denver, Colorado in the ordinary course of business. I am aware that on motion of the party served, service is presume invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY FAX) I transmitted, pursuant to Rules 2001 et seq., the above-described document by facsimile machine (which complied with Rule 2003 (3), to the above-listed fax number(s). The transmission originated from facsimile phone number (714) 434-8756 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached hereto.

[ ]    (PERSONAL) I caused _____ to personally serve the addressee(s).

Executed on November 23, 2007 at Denver, Colorado.

[XX]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

8115\3\1099180.1

- 35 -    EXPERT REPORT OF JACK ZABLE