**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.    **CV 06-1902-VBF(PLAx)**                              Dated: **August 5, 2008**

Title:    Interactive Health LLC -v- King Kong USA, Inc.

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

    Rita Sanchez                              None Present
    Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

    None Present                              None Present

**PROCEEDINGS (IN CHAMBERS):**   **DEFENDANTS' RULE 50 MOTION RE: OBVIOUSNESS OF CLAIMS 8 AND 9 OF THE '940 PATENT**

    The court finds that as a matter of law Claims 8 and 9 are invalid as obvious under 35 U.S.C. § 103.

    A patent is invalid under § 103 when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *KSR International Co. v. Telefex, Inc.*, 127 S. Ct. 1727, 1729 (2007) (quoting 35 U.S.C. § 103(a)). While a question of law for the court, the inquiry is based upon the following factual inquiries: the scope and content of the prior art are determined; the differences between the prior art and the claims at issue are ascertained; and the level of ordinary skill

MINUTES FORM 90                                      Initials of Deputy Clerk   rs
CIVIL - GEN

in the pertinent art resolved.  *See id.* at 1729-30 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).  "Against this background the obviousness or nonobviousness of the subject matter is determined."  *Id.* at 1730.  "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter to be patented."  *Id.*  In addition, although it is not to be rigidly applied, the "teaching, suggestion, or motivation" test should be employed as a "general principle" to aid the obviousness inquiry.  *See id.* at 1741.

    A.    Level of Ordinary Skill in the Art.

The court assumes, for the purposes of this Motion, that the Plaintiffs' definition of the level of ordinary skill in the art is correct.  However, the court finds a determination as to this issue does not impact the court's analysis of obviousness.  The patents and prior art at issue are not complicated, and the parties have not clearly articulated what, if any, impact this dispute has upon this court's obviousness analysis.

    B.    The Scope and Content of the Prior Art.

The court finds that the JP '187 reference is within the scope of the prior art.  To the extent the Plaintiffs argue the JP '187 reference is merely cumulative of prior art already considered by the Patent Office, the court finds the assertion was insufficiently unsupported.  For example, the '962 patent discloses an invention that uses complete disks, and does not disclose an invention which uses guide members that restrict rotation about the shaft.  (*See* Ex. 326).

    C.    Differences Between the Prior Art and the Claimed Invention.

"[D]ifferences between the prior art and the claims at issue should be determined from the vantage point of the hypothetical person with ordinary skill in the art."  *Tokyo Keiso Co. v. SMC Corp.*, 533 F.Supp.2d 1047, 1054 (C.D. Cal. 2007) (citing *Graham*, 383 U.S. at 17-18).  "Differences between prior art and the claimed invention are ascertained by

interpretation of the teachings of the prior art and the claims of the patent." *Id.* (citing Chisum on Patents § 5.03[5] (2003) (internal alterations and quotations omitted)).

The court finds insubstantial differences between the prior art and Claims 8 and 9 of the '940 Patent. The parties do not appear to dispute that several limitations in Claims 8 and 9 are taught by the JP '187 reference. For example, the JP '187 reference teaches the use of the revolving shaft, cam members, and guide members. (*See* Prepelka, 7/30/08 Tr. II at 117:19-119:9). In addition, the JP '187 reference discloses the "toward and away" motion described in the '940 Patent. (*See id.* at 120:20-121:21). The addition of chair elements in Claim 8 is obvious in light of the prior art chair massagers. (*See*, *e.g.*, Ex. 225 Col. 1:15-55).

To the extent a triable issue is presented as to whether the JP '187 reference discloses a "lower leg massager," the court finds, as the Defendants assert, that the JP '187 reference directly teaches its use on the leg. (*See* Ex. 700 ¶ 0001; *see also id.* ¶¶ 0036 (stating rubbing element may be changed "according to the preferences of the user or the part treated . . . and a satisfactory treatment effect is obtained . . . ."; 0032 (allowing adjustment of the distance between the massage elements depending on the part to be massaged); 0033; 0008). Similarly, while the Plaintiffs argue JP '187 does not disclose an elongated board, the court notes the Plaintiffs argued successfully that this limitation simply required the board be longer in one dimension than the other, and that the only structure which would not satisfy this limitation would be a circle or a disk. (*See* Dec. 20, 2007 Order at 16). The "Outer Ring" structure in the JP '187 reference satisfies this limitation. (*See* Ex. 700 Fig. 4).

The Plaintiffs argue that the JP '187 reference does not teach the creation of a "therapeutic recess for enclosing the lower leg." As the Defendants assert, Plaintiffs' arguments appear to be primarily one of depth, i.e., that the recess formed in the JP '187 reference is too shallow, and that in turn the JP '187 reference only teaches a massage performed along the periphery of the "rubbing elements," as opposed to along the inside surfaces. (*See* Ex. 700 Figs. 3, 4, 5). However, as the Defendants assert, there is no limitation in the '940 Patent which requires contact with the leg solely on the inside surface of the elongated board. The limitation simply states the elongated boards must create a therapeutic recess for enclosing the lower leg. JP '187 teaches the creation of such a recess where a therapeutic massage is performed. (*See* Fig. 5; *see also e.g.*, ¶ 0034). Further, the

court finds scaling the size of the massage members to provide a suitable therapeutic recess is an obvious, common sense, alteration in light of the JP '187 reference's specific teachings that it may be used upon the leg. Mr. Womack on cross examination admitted for any sort of an effective massage to be applied the massage members, and therefore the therapeutic recess, would have to be scaled. (Womack, 11/31/08 Tr. at 114:3-20). While Mr. Womack is not an expert designated to testify as to what a person skilled in the art would think, his testimony underscores the very common sense nature of such an alteration.

Therefore, the court finds the Defendants have presented a strong prima facie case of obviousness of Claims 8 and 9.

### D. Secondary Considerations

The Plaintiffs assert certain secondary considerations, such as commercial success, long felt but unresolved need and copying all weigh against a finding of obviousness. While these inquiries are relevant, they do not control the obviousness inquiry. *Keiso*, 533 F.Supp.2d at 1059-60 (citing *Richardson-Vicks v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997)). "Instead, they assist the Court in ascertaining the extent of any objective indicia of non-obviousness." *Id.* Moreover, "a nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision." *Muniauction, Inc. v. Thomson Corp.*, —F.3d—, 2008 WL 2717689, *7 (Fed. Cir. 2008). "Put another way, commercial success or other secondary considerations may presumptively be attributed to the patented invention only where the marketed product embodies the claimed features, and is coextensive with them." *Id.* (internal quotations and citations omitted).

#### 1. Commercial Success & Long Felt But Unresolved Need

The Plaintiffs' arguments regarding commercial success and long felt but unresolved need essentially overlap. In short, the Plaintiffs assert products incorporating the '940 technology have met with success in the marketplace. However, the court finds the nexus between any commercial success of the product and the '940 Patent is attenuated at best. Mr. Womack testified to the strong growth in Human Touch's sales and revenues from

2001 to 2004.  (Womack, 7/31 Tr. I at 7:23-8:4; 10:2-10).  Mr. Womack attributed this growth to the introduction of the lower leg massager.  (Womack, 7/31 Tr. I at 11:2-25).

On cross-examination, however, Mr. Womack admitted Human Touch chairs contained several massaging features, including ones for the neck and the back.  (Womack, 7/31 Tr. I at 80:9-81:22).  In addition, Mr. Womack admitted certain aesthetic elements of the chairs were of at least some importance, including the ability of the lower leg massager to flip around such that the massaging wells are not visible.  (Womack, 7/31 Tr. I at 79:15-80:5; 82:11-83:16).  This mixture of other features, both technological and aesthetic, are also featured in Human Touch's marketing materials.  (*E.g.*, Ex. 1448-6 to 1448-14).  Similarly, the deposition testimony of Mr. Schwartz, the Merchandise Director for Brookstone, testified the design and "look" of the product was good, and that the reversibility feature was unique, but that the leg massage feature was a "minor" factor in their decision to carry the Human Touch chairs.  (Schwartz, 7/30 Tr. I at 54:9-10; 55:11-23).  Mr. Shimizu also stated when he was asked why consumers buy the chairs that "it just looks very natural in its setting, that it blends in very well."  (Shimizu, 7/31 Tr. II at 140:12-16).

2.   Copying

The presence of infringing chairs in the marketplace does provide some support for Plaintiffs' contention Claims 8 and 9 are non-obvious.  "[H]owever, [] a showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations. . . .  The reason is that the alleged copying could have occurred out of a general lack of concern for patent property."  *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000) (internal quotations and citations omitted).  The court finds this consideration is therefore entitled to little weight.

In sum, the court finds the secondary considerations advanced by the Plaintiffs are entitled to very little, if any weight.  Moreover, even if, as it must, this court considers the evidence presented by the Plaintiffs in a light most favorable to them, the court finds the evidence is insufficient to overcome Defendants' strong prima facie showing of obviousness of Claims 8 and 9.